Let's call the next case, 4-15-0248 McLean County School District Unit 5, Workers' Compensation Commission. Good morning. Fred Elward on behalf of McLean County School District Unit 5. Today we're here to talk about whether the claimant's trip and fall accident that took place on a bus lot arose out of her employment. In this case, I'm just going to briefly talk about a couple of the facts and then move into the actual issue before the court. The claimant was a school bus driver who had finished her route at the end of the day and was back in the bus lot and left her bus, was walking to leave. She had stepped up on a curb and she was maybe 10 feet from the curb. She realized she forgot her log book. She turned around, took about four steps, and as she was stepping back onto the parking lot surface, she fell and she hit her head. And that gives rise to the accident. Mr. Elward, this is a neutral risk, right? I think it is. So what factors increased the risk to this employer being exposed to the general public? Well, we don't believe that there were any. But what the commission found were basically five factors. And I think we can run through them real quick and two of them can be summarily dismissed and we can focus on the three that the commission, I think, spent the most time on. First of all, the commission looked at the chiropractor's records, Dr. Schnock's records, and said the doctor's opinion letter said that she fell on ice and said that there was no evidence about the condition of the premises immediately after the accident. And they rejected Mr. Adleman, who was our safety inspector, who had gone out and looked at the premises and said that I didn't see any defects in the premises. So they rejected his opinions. But as we pointed out in our brief, when you read over the chiropractor's records, it's patently clear that they were confused. She had a prior accident where she fell on the ice. There's no question about that. So the ice is a red herring in this case. I think it is. And I'm frankly surprised it survived this far. But that has to go. And when you throw out that conclusion, which they said is a significant conclusion, a significant finding on their part, you also have to then dismiss their criticisms of Adleman's inspection of the premises because it was related to the rejection of his opinion was related to the fact that, well, he was out there a day afterwards, the ice could have melted. Well, did the claimant herself say anything about slipping on ice in this particular event? No. No. And that's the thing. And that's why there's no evidence from our side in the record about what the temperatures were on the day. This was not a case of a fall in the ice. It's clear from the chiropractor's records that we attached to our brief that there was a prior accident involving ice and the chiropractor just combined the two and made it into one accident and attributed it to this. And it didn't count. So was there anything else about the curve that would make it dangerous or defective in any way? No. No, there's not. Adleman testified there was no defect. And his opinion was wrongly rejected because they were focusing on the ice, which is a non-issue, as you say. And the video footage does not appear to show any ice. No. No, it does not. It all looks like dry concrete. Correct. It does not. I would agree with that wholeheartedly. So what does that leave us? That leaves us three points that the commission looked at. I think when we walk through those, we see those are not sufficient to uphold the commission's decision. The first, they point to a Broman medical record where they say that she described the accident as, I realized I forgot my log book and I turned quickly around to go back and get the log book. But I think the important thing here is she may have turned around quickly. But the video evidence, which is unrefuted, shows she was not turning around when she fell. She had already turned around. She walked four steps and then she fell. She testified, I was not hurrying. So we can't look at that and say that's a justification. There's no foundation for that conclusion. So we look at the point of she was carrying a sack of food items in her left hand. Well, as you can tell from looking at the video, she had it in her left hand and the fall took place off to her right. It wasn't like a situation where it blocked her view or the case that we all know where the individual was carrying the box of knives down the stairs and it blocked their view and they fell. It's not like the YMCA case where the individual was walking down the stairs and had an item in each hand. And when they lost their balance, the commission concluded that the petitioner was prevented from reaching out and grabbing a handrail and that accentuated the fall. So we don't have anything here that says the carrying of the sack of food in the left hand contributed in any way. It's like the knee case where the court was looking at what the individual was doing. They said, well, the fact that he was carrying a clipboard doesn't make any difference because there's no evidence to show that it in any way contributed to his fall. Did she say that the sack of lunch had anything to do with it? Pardon me?  No, I think it was inferred by the commission. And I think that's a significant problem. The other area that the commission mentioned, this was kind of in passing, is that the accident occurred in an area that was restricted to employees only. And again, where we don't have a defect, where we have a common... Your position is it's absolutely irrelevant that it occurred in an area open only to the employees. Absolutely. What's your best case, Caterpillar? I think it's a combination, Your Honor. I think Caterpillar, I think knee lays the foundation for how we look at this. I understand it's a traveling employee, but the comments that this court made about falls in general and neutral risk are very important. Caterpillar is a strong case, and I think Adcock is a good case for us. Because Adcock says that we're going to reject the notion that an injury is compensable merely because the claimant was injured performing some bodily movement required by her job. So if counsel is going to stand up and say, well, she testified that she was returning to her bus in order to pick up her logbook. That's part of her job duty, so therefore that falls within compensability. I think the answer to that has to be no. It's not. We still have to perform an analysis that says where is the increased risk. We all encounter curbs. At the best case scenario they can show is she encountered the curb in this case twice. She went out to her bus. She came back. She realized she forgot something, and she started back. Theoretically she would have encountered them four times. Let's look at this. The justification for awarding benefits according to the commission was, one, there may have been some ice on the island. There is no evidence of any ice on the island. Correct. Two, the accident occurred in an area that wasn't open to the general public. That's irrelevant unless there's a defect. The claimant told the emergency room personnel that she turned around quickly. So what? And four, the claimant was carrying a sack of food used for nourishment while she was driving, but she never said that carrying the sack of food had anything to do with the reason why she fell. Did we just run out of the reasons? I think that's all the reasons. That's all I have down. I mean, I know there's some other generic comments made by counsel, and I'll leave those to her, but we just don't see the evidence here to show an increased risk. Now, if it was qualitative, you'd have to concede if she was traversing the curve, you know, on a regular basis, 8, 10, 12 times a day, it might be different. It would be a different situation if it were multiple times, yes. Yeah, 8 to 10 to 20, 30. Again, it's their burden to show. And here, the best we can say is four. Thank you. Thank you, counsel. Counsel, you may respond. Good morning. I'm Jean Swee. I represent Doris Buxton. This is still a manifest weight question. It is a question of law. Even though we believe that this decision is correct, the interpretation of facts could have gone either way. It didn't. Well, let's hold you on this ice. How can it go either way? If we've eliminated every reason given by the commission, it's fictional music. Judge, I haven't eliminated those at all. Which one do you think exists? Okay, what do I think is most compelling? Okay, most compelling probably that she's carrying her bag of goods. I mean, when you look at Knox County, I think there's a lot less going on in that case than there is in mine. My client's carrying her lunch, partially eaten, Pepsi in a bag, and her wallet in her left hand. In Knox County, she's carrying a soft drink in one hand and a purse in another. That was increased risk. I'm sorry. Yeah, but the claimant herself didn't say they had any bearing on the accident. I think C763, I think is where she said, as I started to fall, she tried to grab a bus crossover mirror. I think that's in the record. So there's a balance thing going on. I mean, that's what she said. How is it different than Knox with the clipboard? Say what? The clipboard casing that you were referring to earlier. The clipboard, I don't know. How is it different than Knox with a sack in one hand and a wallet in the other? I mean, she's coming down steps. She's in the course of her business. I think that's one compelling. But I think there's others. Now, Doris is 275 pounds. She's got a previous knee injury, which was work-related. She doesn't have good balance, right? So I think the hurrying, I do believe she was hurrying, and I do believe she was preoccupied. She says, now, Doris doesn't look like she's rushing. I will grant you that. But I've watched Doris, and she never looks like she's rushing. She weighs a lot. She's got a bad knee from a previous work accident. Doesn't that place her at greater risk? Anyway, she says, I'm going to check out. I realize I forgot my logbook. She's preoccupied. I don't know if you guys remember this. Rule 23 on Mary Boring. Being preoccupied can affect your judgment, can affect your ability to do things. She's preoccupied. She's thinking about getting her logbook, and she's thinking about getting back to check out and joining the people she was walking with. That, I think, is also a factor. We can't eliminate it. It was a factor in finding that her employment placed her at greater risk. Well, how do we distinguish this from any case? Arguably, most employees are preoccupied and concerned about their duties, are they not, in every case? Not in – she was walking with people to check out. She turns around to go back to pick this item back up again. She was hurrying to catch back up again to check out. No, I think that's different. I think that falls in the same as the FedEx. The woman's hurrying to make a last-minute FedEx delivery. Now what case am I referring to? Is that also Knox? No, it's not Knox. Where the woman was deceased. It's slipping my mind right now. But she was hurrying – she was also drinking. But there was – she was hurrying to mail last-minute stuff. And they said, well, the hurrying behavior increases the risk. So I think that her hurrying, Doris's hurrying, increased her risk for injury. And, by the way, I'm not so sure I agree with you all – I mean, I don't agree with all of this interpretation that the chiropractor meant the previous injury for slipping and falling. She clearly says – Dr. Schnack clearly said in her records, slipped and fell on ice, migraines, headaches. That's what – I don't think – Yeah, but your client never said she slipped on ice. She didn't. That's true. I mean – But the chiropractor did. I mean, you have to admit that the context of the records certainly makes it appear that the chiropractor mixed up the previous accident. I don't know what the – And then when your client – I don't know. She never said, I slipped on the ice. Right. She did not. But when the – I don't know why the chiropractor wrote slipped and fell on ice. I don't know what she was thinking. We did not depose her. She did say slipped. Certainly she slipped. Doris had fallen on ice earlier. I grant you that. But I don't – but she also said cervical and migraines. And that's not what the previous injury was. It was to her knee. So what the chiropractor was thinking, I don't know. Also, who's Dr. Lee? Oh, she's the neurologist. Okay. Dr. Lee in the original history report about Dr. Lee, is this true? Initially referenced a slip on ice. But she, the doctor, later deleted that reference. Is that true? I can't recall, Judge. The records still exist. Okay. I want to point out, when we look at factual findings, we're looking at what did the arbitrator see. We're looking at what did the commission affirm. When the arbitrator is reviewing the film, the arbitrator looked at it. She was very fascinated by the video. She made defense replay it a number of times. And she also said, counsel, zoom in on this. And when they zoomed in on it, she said on the record, that foot catches on the sidewalk. That's what happens. The arbitrator saw her foot catch on the sidewalk. That's a finding of fact. She saw that, the arbitrator saw that in the video. That's what she said. The same one that's available for us to look at. Yes, exactly. It's a question of fact. I'm intrigued by something. A person is 275 pounds and is required to step up on a curb, which may be more difficult for a person 275 pounds than the average individual. But does that change Caterpillar, which suggests that the traversing of curbs is something that everyone has to do and is not considered an increased risk above that to which the general public is exposed? Do we judge it by, is the general public the average 275-pound person, or is the average person crossing, traversing curbs? Judge, she's a 275-pound person with a previous knee injury causally related to a work accident. I think both those factors increase. But it's not causally related to this work accident. Well, no, but she's at increased risk because of her employment, and their employment caused her to have a bad leg. But the other thing – Whoa, whoa, whoa, whoa, whoa, whoa. Let's not pass over that quite that quickly. Just saying. That's a prior work accident. It has nothing to do with this work accident. I realize it does not. So she's got a bad leg, but she traverses a curb. Is she entitled to being held up to a different standard than Caterpillar? No, she's not. But I do want to point out, and I do think this is a significant factor, this is not just a curb, it's a bus island. This bus island is fenced in. It's not open to the general public. They have seven different bus islands for these buses to park on. So it's a different construct. Well, let me ask you a question. Is there any evidence in the record that suggests the bus island is higher than the average curb, lower than the average curb, angled differently than the average curb, or somehow defective? No, but there are more curbs there, Judge. There's seven islands. There's more curbs there. That's not a design that we see in the general public. Okay, so how do we know that? Adelman said there's seven bus islands. Okay, but how do we know that the general public, what's our logical reasoning that because there's seven curbs, an employee has to traverse seven curbs in a period of time? Where do you see seven curbs on the street? I don't see it in that parking lot. Yeah, but that's yours, the record. You're asking us to take notice of something that's not in the record. Adelman said there's seven curbs. There's seven bus islands. Well, there may be seven bus islands, but was she required to traverse all seven of them? Do you know that? Wherever she parked her bus, she's got to get to the – Well, she's got to traverse one. Possibly. Well, is there any evidence in the record she had to traverse more than one? No, there's not. Okay, then is it relevant that there are seven islands? Yeah, I think there is. Well, she – I think there's a relevance that it's not open to the public. Yes, I do think that. But how is that relevant? The fact that it's not open to the public doesn't increase a risk. The risk is the curb. A curb is a risk, but the Supreme Court has said that's not a risk to which greater than the general public is exposed to, so therefore an injury traversing a curb is non-compensable, according to the Supreme Court. Now, we're stuck with that. What did she do, and what about the seven islands, increased the risk to her? Mainly because it was fenced in? It's not open to the general public. Well, how does that increase the risk? Is there any case law that says that that becomes a factor, if it's not open to the general public, that inherently increases the risk? I'm trying to see the nexus there. I mean, a hole in a defective parking lot that is not open to the general public that an employee is required to park in does increase the risk because there's a defect in an area where the employee is told to go. But if there is no recognizable defect in an area not open to the general public, I'm at a loss to understand how being open to the general public or not being open to the general public is relevant to the inquiry. Something on the curb made her foot catch. So I think, I mean, according to the arbitrator, according to the fact finder, according to the commission that approved the class. People trip on curbs. Something caught her foot. Adelman's testimony 24 hours later didn't help. Something caught her foot. Something put her down. That's what the fact finders found. Well, what is the something, though? Adelman said there was no defect, didn't he? So what? He was out there. He goes out 24 hours afterwards and looks at it. How is that relevant to what happened when the arbitrator saw the occurrence? Well, what's the something that caught her foot? Who knows? It's speculation. Something caught her foot. That's according to what they found. And I also think, I mean, I really, I personally cannot imagine how this is any different than the Knox case. I just, for the life of me, I don't get it. She says she tried to reach out, and I don't understand the difference. So I'm asking you to affirm it, and I guess in terms of disability, I guess we didn't get to it, but, and you're going to get to a lot of disability later on. But anyway, the 2% man as a whole, as they said, is not a charity. Her disability is corroborated by the medical records. She has migraines now, and we're asking you to affirm. Thank you. Counsel, you may reply. My only response is to the contention that her foot caught on something on the sidewalk. I don't think that has really any bearing. As the court pointed out, you can catch your foot for a variety of reasons, and without a defect, it makes no difference. The last thing I want to make a note of is reaching out for a cross mirror. There was no bus even close to this lady when she fell. That had been one big mirror. So I think that she's confusing the two accidents where she was actually trying to get into a bus. It certainly isn't this case. Thank you. Thank you, counsel, both for your arguments in this matter. The court will be taking on an advisement. The witness position shall issue for a standard brief recess.